MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2026 ME 71
Docket:        Yor-25-269
Argued:        January 8, 2026
Decided:       July 28, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

CONSTANCE L. BEANE

v.

VILLAGE ON GREAT BROOK, LLC, et al.

DOUGLAS, J.

[¶1]   Constance L. Beane, a resident of the Village on Great Brook condominium, appeals from a judgment of the Superior Court (York County, *Martemucci, J.*) dismissing her complaint seeking specific performance of an agreement between Village on Great Brook, LLC (the LLC), the Village on Great Brook Unit Owners Association (the Association), and some of the unit owners. *See* M.R. Civ. P. 12(b)(6).   The court concluded that a missed performance deadline in the agreement constituted an unmet condition precedent which relieved the LLC of its obligations under the agreement.   We vacate the dismissal and remand for further proceedings.

## I. BACKGROUND

[¶2]  Beane's complaint and its attachments set out the following facts, which we view in the light most favorable to the plaintiff because the trial court dismissed the complaint.  *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 7-11, 843 A.2d 43.

[¶3]  The Village on Great Brook is a multiunit condominium established in 2016 on land in Eliot and owned by the LLC, which was the condominium developer and declarant.  Beane owns and resides in condominium unit 31, which is directly adjacent to an undeveloped plot of land designated as lot 26.

[¶4]  By 2022, most condominium units had been sold.  In November of that year, the LLC submitted to the Town of Eliot Planning Board an application for an after-the-fact amendment to the existing subdivision plan, proposing substantial changes to the original plan and requesting approval to develop additional units.

[¶5]  A number of unit owners expressed concerns about the LLC's plan, both at planning board meetings and through petitions sent to the Town.  They complained about, among other things, the condominium's infrastructure, including the roads, the stormwater management system, and other improvements, which, Beane claims, "were not being done properly."  The unit

owners requested that the Town require a full site-plan review and a performance bond.

[¶6] On February 13, 2023, the LLC, the Association, and the unit owners reached an agreement that would address the unit owners' concerns and allow the LLC's application to move forward.[1] The agreement required the LLC to, among other things, undertake and complete certain work on infrastructure, pay the Association $35,000 from the proceeds of the sale of certain land, and "convey to [the Association] the vacant, buildable lot on Pheasant Lane, known as Lot 26." In return, the unit owners released the LLC from any claims under their construction warranties and agreed to withdraw their opposition to the LLC's planning board application. Paragraph 12 of the agreement provided that "[t]he obligations of the parties hereunder are contingent upon the occurrence of the items described in subparagraphs (a)-(d) below." Subparagraph 12(a) required "Planning Board approval no later than March 1, 2023, of the Application as filed by [the LLC] . . . ."

[¶7] The Planning Board did not approve the LLC's application by March 1, 2023, but did finally approve the application twenty-seven days later,

---

[1] The record establishes that Beane was a signatory on the agreement. The Superior Court determined that Beane had standing to maintain this action. Neither the Town nor its planning board were parties to the agreement.

on March 28, 2023. At some point after that, Beane observed stakes in the ground on lot 26 and was told that the lot, which the agreement required the LLC to convey to the Association, was to be sold to a third party for development of a new unit.

[¶8] In November 2024, Beane filed a four-count complaint against the LLC. Count 1 of the complaint asserted a claim for breach of contract and requested that the Superior Court enforce the agreement "by ordering that [the LLC] specifically perform all terms of the [s]ettlement [a]greement." Count 2 and Count 3 asserted claims based on quantum meruit and unjust enrichment, respectively. Count 2 sought the same relief as prayed for in Count 1—an order of specific performance; Count 3 sought compensatory damages. Count 4 requested declaratory relief pursuant to 14 M.R.S. §§ 5951-5963 (2026).

[¶9] In response, the LLC moved to dismiss the complaint with prejudice pursuant to M.R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. The court granted the LLC's motion. With respect to the claim for breach of contract in Count 1, the court concluded that because the "condition precedent [of planning board approval of the LLC's application] was not satisfied by the time provided [March 1, 2023], the parties' respective obligations under the [a]greement were discharged." The court dismissed the

quantum meruit and unjust enrichment counts as legally insufficient on independent grounds and dismissed the request for a declaratory judgment as moot considering its disposition on Count 1.

[¶10]  Beane filed a motion to reconsider pursuant to M.R. Civ. P. 59(e) and a motion to amend the complaint pursuant to M.R. Civ. P. 15(a), both of which the court denied.  Beane timely appealed.  *See* M.R. App. P. 2B(c)(2).

## II.  DISCUSSION

[¶11]  Beane's appeal focuses essentially on the dismissal of the claim for breach of contract in Count 1.[2]  "We review the legal sufficiency of a complaint de novo, examining the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory."  *Alrig USA Acquisitions LLC v. MBD Realty LLC*, 2025 ME 11, ¶ 10, 331 A.3d 372 (alterations and quotation marks omitted).  "A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim."  *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994) (quotation marks omitted).

---

[2]  Beane does not challenge the dismissal of Counts 2, 3, and 4.  Any other issues raised in this appeal are now more appropriately considered by the trial court on remand, including whether to reverse its denial of Beane's post-judgment motion to amend the complaint.

[¶12]   Beane argues that the court erred in determining as a matter of law that the agreement's March 1, 2023, deadline for planning board approval was a material condition precedent to performance of the parties' respective obligations.  She contends that whether the specific timing of the approval was material to the parties' agreement—in other words, whether time was of the essence—is a question of fact and thus not properly considered in the context of a Rule 12(b)(6) motion.  In the circumstances presented here, we agree.

[¶13]   In granting the LLC's motion to dismiss the claim for breach of contract in Count 1, the court relied upon our 1929 decision in *Colbath v. H.B. Stebbins Lumber Co.*, 127 Me. 406, 144 A. 1 (1929).  *Colbath,* however, is not controlling.

[¶14]   *Colbath* involved an action at law, specifically an "[a]ction on the case to recover under a written contact for an alleged excess of spruce and fir logs above an amount stated in the contract."  *Id.* at 407-08, 144 A. at 2.  The parties had agreed that the price to be paid for lumber milled by the plaintiff was contingent upon the number of logs that had been harvested by the date specified in the contract.  *Id.* at 409, 144 A. at 2.  We concluded that the trial court had erroneously instructed the jury that "whether the parties intended [time] to be of the essence was a question of fact for [the jury] to determine"

and held that "[i]n an *action at law,* when a promise is expressly conditioned upon an agreed condition to be performed within an expressed time, this Court cannot say that is immaterial which the parties have made by their contract material." *Id.* at 412, 144 A. at 4 (emphasis added).

[¶15]  The principal relief Beane seeks—specific performance—is equitable in nature. *See J.B. Brown & Sons v. Bos. & Me. R.R.*, 106 Me. 248, 255, 76 A. 692, 695 (1909) (recognizing that "[t]he relief afforded by a bill for specific performance of contracts is purely equitable"); 14 M.R.S. § 6051(3) (2026) (specifying the Superior Court's "jurisdiction to grant appropriate equitable relief . . . [t]o compel the specific performance of written contracts"). Even *Colbath* recognized that our jurisprudence addressing temporal contract conditions has historically depended upon whether a case was brought as an action at law or was one brought in equity. *Colbath*, 127 Me. at 411, 144 A. at 3 ("In general, it may be said that at law time is always of the essence of the contract, although in equity a different rule prevails." (citations omitted)).

[¶16]  Thus, in actions seeking equitable relief we have held that a temporal condition precedent or even "an express stipulation in the contract that time shall be of the essence of the agreement will not be accepted by a court of equity as a final and conclusive determination of the question of specific

8

performance against the manifest equity disclosed by all the facts and circumstances of the case." *Telegraphone Corp. v. Canadian Telegraphone Co.*, 103 Me. 444, 454, 69 A. 767, 771 (1908); *see Colbath*, 127 Me. at 411, 144 A. at 3 ("Time in equity is held to be of the essence or not, according to the circumstances of the case."); *Medomak Canning Co. v. York*, 143 Me 190, 195, 57 A.2d 745, 747-48 (1948) (holding that "in the absence of special circumstances warranting a court of equity in granting relief" a condition precedent must be complied with within a stipulated time (quotation marks omitted)); *see, e.g.,* *Snowman v. Harford*, 55 Me. 197, 199 (1867); *Hull v. Noble*, 40 Me. 459, 474-75 (1855); *Jones v. Robbins*, 29 Me. 351, 353 (1849); *Rogers v. Saunders*, 16 Me. 92, 97-99 (1839); *Getchell v. Jewett*, 4 Me. 350, 361-63 (1826).

[¶17]  Of course, our modern rules of procedure have "abolish[ed] the common-law forms of action and [effected] a procedural merger of law and equity."  2 Harvey, *Maine Civil Practice* § 2:1 (3d ed.), Westlaw (database updated Sep. 2025); *see also* M.R. Civ. P. 2 ("There shall be one form of action to be known as 'civil action.'").  Although "[t]he right to a specific kind of legal or equitable relief upon proof of certain facts remains as it has been under prior practice," Harvey, *supra*, in more recent years we have moved away from the strict delineation between law and equity articulated in *Colbath* with respect to

temporal conditions precedent in a contract. In *Raisin Memorial Trust v. Casey*, we said, citing *Colbath*, that "whether time is of the essence in a contract *is a matter of fact* and cannot be determined simply by the presence or absence of these magic words in the contract." 2008 ME 63, ¶ 21, 945 A.2d 1211 (emphasis added) (citation omitted). Rather, we look to "the nature, circumstances, and purpose of the contract to determine whether time is of the essence." *Id.* A contract's express provision of a performance date may or may not represent "persuasive evidence" of the parties' intent; whether it constitutes a material term will depend upon the facts and circumstances of the case. *See id.* ¶¶ 21-22.

[¶18] The circumstances surrounding the parties' agreement in this case make it particularly apt that the question of intent as to the materiality of the March 1 approval deadline be considered a question of fact "and cannot be determined simply by the presence or absence of [the] magic words in the contract." *Id.* ¶ 21. The agreement's performance deadline at issue—the March 1 date for planning board approval—was, as far as can be determined from the undeveloped record in this case, beyond the control of either party. At the very least, there is no indication that the Association or the unit owners had control over the timing of the approval; indeed, they had every incentive to avoid delaying the approval beyond that date. Moreover, the Planning Board

did approve the LLC's application just twenty-seven days later. It appears that the LLC may have reaped the benefit of the bargain in any event—its application was approved.[3]

[¶19] Whether the parties intended the March 1 date for planning board approval to be a material condition precedent to performance of their respective obligations under the February 13, 2023, agreement is, therefore, a question of fact not suitably determined on the pleadings. Viewed in the light most favorable to Beane, the complaint otherwise alleges facts that could support a claim for breach of contract. We therefore hold that the court erred in granting the LLC's motion to dismiss Count 1 for failure to state a claim.

The entry is:

> Judgment vacated. Remanded for further
> proceedings consistent with this opinion.

---

[3] It is also unclear from the facts alleged in the complaint whether the LLC continued contracted work or whether it agreed to waive the timing of the approval, but either of those facts, if proved, could entitle Beane to relief under a theory of waiver. *See* Restatement (Second) of Contracts § 225 cmt. c (A.L.I. 1981), Westlaw (database updated Oct. 2024) ("Not only may a party excuse entirely the non-occurrence of a condition of his duty, but he may merely excuse its non-occurrence during the period of time in which it would otherwise have to occur."). The record indicates that Beane's Rule 59(e) motion for reconsideration included as an attachment a letter from the LLC's counsel to the Association's counsel sent less than a month after the Planning Board's March 28, 2023, approval of the LLC's application reflecting that negotiations were still ongoing over one remaining condition specified in the February 13 agreement. Counsel for the LLC represented that "planning board approval has been granted (and [the LLC] is willing to waive the March 1 deadline)." We also note that some of the unit owners did not even sign the agreement until after March 1, 2023, and indeed signed as late as April 3, 2023, which may also bear upon whether the time of the planning board's approval was of the essence.

---

Patrick S. Bedard, Esq. (orally), Law Office of Patrick S. Bedard, P.C., Eliot, for appellant Constance L. Beane

Benjamin E. Ford, Esq. (orally), Archipelago, Portland, for appellee Village on Great Brook, LLC

York County Superior Court docket number RE-2024-72
FOR CLERK REFERENCE ONLY